Ewing, C. J.
In this action, dower is demanded of certain real estate in the township of Newton, in the county of Sussex. A verdict was taken upon the trial at the circuit for the demandant, subject to the opinion of this court upon a state of the case.
The question between the parties is whether it appears from the facts in evidence that Samuel Griggs was, in his lifetime, so seized as to entitle the demandant, his widow, to dower.
The claim of dower is favored in the law. The widow is not entitled to-the custody of the muniments of title. They belong to and therefore presumed to be held by the husband in his lifetime and after his decease, by his heir, or in case of alienation, by the alienee. Hence a strict deduction of title is not required of her. It is enough for her to produce such evidence as will raise a fair presumption of the seizin of the husband ; and such presumption, unless overcome by the proof produced by the defendant, will support her claim.
The demandant produced a deed of bargain and sale, in fee simple, with a clause of general warranty, dated 4th August, 1804, duly proved and placed on the public records of the county, from Peter Wintermute to her husband, in consideration of thirteen hundred dollars,'for the premises out of which she seeks dower. She proved that her husband was after-wards in possession, for at least three years, himself using part, and the rest occupied by his son as a tenant under him. It was farther *shewn satisfactorily, that Peter Wintermute was in possession prior to his conveyance to Griggs. It is true, one witness examined by the defendant, said, Wintermute never was in possession; but he must have *27 spoken of a pedis possessio ; for besides one witness of the demandant who testified that he was acquainted with Wintermute and with the premises, and although he never saw him there, yet knew he was in possession from frequent conversations with him at the time on the subject, another witness, James Johnson, testified that his father held the premises under Wintermute for two or three years; that he knew Wintermute had put his father into possession; and he himself worked for his father upon the premises. These facts then, a deed from a person having the previous possession, purporting to convey the premises in fee simple to the husband, and a possession of the husband for three years under such deed, are prima facie evidence of the seizin of the husband, and establish a sufficient seizin to entitle the demandant to recover unless repelled by the proofs of the tenant.
It remains then to enquire whether any other facts developed in the case neutralize or defeat this presumptive evidence of seizin.
1. The husband of the demandant quit the possession of the premises many, perhaps eighteen years, prior to his decease, which took place in 1826, somewhat more than a year before the commencement of this suit. What is the consequence ?
The husband, or some other to his use, must be seized of an estate of inheritance in the land at some time during the marriage to entitle the wife to dower. At what time is not material, nor is it so that he should die seized. “ At any time during the coverture,” are the words of our statute. If there was in the present case a seizin, its continuance is. sufficient. Any period of time however short, during which the seizin subsists, will be a sufficient foundation for the title to dower, unless it be a transitory seizin, as it is called, or a seizin for an instant, as where the same act which gives him the estate conveys it also out of him, or where he'takes a conveyance in fee and at the same time *28 mortgages the land to secure the purchase money, in whole or in part, to the grantor, or some other person, against whose rights under the mortgage,- dower cannot be claimed. Of this *rule, the case of Broughton v. Randall, is a striking illustration. A father was tenant for life, remainder to his son in tail, and remainder to the right heirs of the father. The son had no issue. Both were attainted of felony and executed at the same time. The father moved his feet after the death of his son; and was adjudged to have been seized of an estate in fee of which his wife had a right to be endowed. Noy 64. The fact that the husband, Samuel Griggs, ceased to possess the premises, after a few years, raises no counter presumption against the evidence of seizin. Such an event is not only common in practice, but perfectly consistent with an actual and lawful seizin and ownership. The manner in which he parted with the possession, if known, might perhaps serve to qualify the estate and produce an effect upon the question under examination. But this manner is not shewn. The only witness who makes any allusion to it testified that he would not say whether his father sold the property or not; he had heard it was sold from his father by sheriff’s sale, but could not say it was so. His father moved away.
2. The defendant gave in evidence a deed dated 10th December, 1812, between John Henry Miller and Catharine, his wife, of the one part, and Isaac Smith, of the other part, whereby in consideration of one dollar, they “ grant bargain and sell, remise, release and confirm,” to him and his heirs and assigns, the tract of land and all their estate, right and title therein, without covenants or warranty.
This deed, dated in 1812, or even plenary and conclusive proof of the seizin at that time of Miller or Isaac Smith, cannot invalidate or annul the antecedent seizin of Samuel Griggs; nor can such deed or proof evince that Griggs was not seized at the time he is alleged to have been so. So frequent is the transmutation of real estate, and so rapid *29 the change of owners, that the one seizin is entirely consistent with the other. There is no proof of the possession of Miller at the date of that deed, nor at any time subsequent to the date of the deed from Wintermuto to Griggs.
The deed from Wintermute to Griggs recites that John Eutherfurd conveyed to John Henry Miller, and John Henry Miller conveyed to Peter Wintermute. If this recital, which it is properly said cannot operate on this defendant, who is not privy to *the deed, nor shewn to claim or hold under it, is laid out of the case, there is no evidence that John Henry Miller ever had title to the premises in question. His deed then can work no prejudice to the demandant. If the defendant thinks proper to refer to this recital as evidence against the demandant, as doubtless he may do, for she has produced it and must abide by it, he must take it as it stands. He must then himself submit to its operation. If he uses the recital for his purposes, she may have such benefit as it may produce to her. And if available, it refers to a conveyance from Miller to Winter-mute, prior to this instrument of 1812.
The recital in the deed from Miller and wife to Isaac Smith, can have no more influential operation than the recital in the deed from Wintermute to Griggs, as neither the demandant nor Samuel Griggs is shewn to claim under Miller otherwise than by the latter recital, nor is the present defendant shewn to hold or claim under Isaac Smith.
The purpose of the introduction, on the trial, of the deed from Miller to Smith, was, I presume, to shew either that Wintermute was only a mortgagee of the premises, or that Miller, who appears to have been in possession prior to both Griggs and Wintermute, remained invested with the title until 1812, when he conveyed to Isaac Smith, and thereby to repel the presumptive evidence of the seizin of Griggs.
The recital in this deed, it is obvious, was not made by way of deduction of title, but as a description of the premises. It contains no courses or distances or boundaries. To *30 identify merely it is said to be “ the same lot ” — “ which was mortgaged by John H. Miller to Peter Wintermute.” Hence it would be unjust to the parties in the deed to consider them as exhibiting the course of the title when they manifestly intended only to describe the property; and an unwarrantable and unanticipated influence would be yielded to this recital to use it as evidence of title.
This deed, however, so far from shewing that the title, if ever vested in Miller, remained in him until its execution, and then passed thereby to Isaac Smith, proves directly the reverse. It expressly disavows any ownership of Miller at that time. “ The same lot which formerly belonged to John Henry Miller,” is the language used. When did it belong to Miller ? It does not *inform us, except by inference, that it did so in 1799, when it is' said to have been mortgaged to Wintermute. When did his seizin cease, or pass to another ? Was it after the conveyance from Wintermute to Griggs ? • We have no light on the enquiry; and there is no 'incongruity between a mortgage to Wintermute in 1799, and some legal transfer of the whole estate to him prior to the year 1804.
The truth cannot escape the slightest observation, that this deed is now invoked to perform an office which, -when made, it was not expected to subserve. The consideration is one dollar. It has never been recorded. It avows, as already noticed, that Miller had himself then no interest in the premises. Although he is made a party and appears to have executed it, perhaps to give formality or sanction to the deed of his wife; yet so unimportant was he .or the operation of the instrument upon any estate vested in him, that the acknowledgment made on the same day with the deed, is by his wife alone, and not by him. The conclusion seems almost irresistible, that the purpose of this instrument was to extinguish some interest, probably an inchoate right of dower, of Catharine Miller in the premises, which Rad once been, but had ceased, at what time we know not, to be the property of her husband.
*31 •There is nothing in the deed, or its contents, giving them their utmost efficacy, to shew a seizin in Miller, inconsistent with, or destructive of, the seizin shewn in Samuel Griggs.
Upon the whole, the case, in my opinion, exhibits a prima facie seizin, of the husband of the demandant, during the coverture, establishes no facts to repel or overcome this seizin, and the demandant is therefore entitled to judgment.
Ford, J., and Drake, J., concurred,
Scudder, for demandant.
Southard, for defendant.